**Estelle BENANTE, As Surviving Wife of Carl Benante, Deceased, Plaintiff-Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, etc., Defendant-Appellee.**

No. 72-3648

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

May 2, 1973.

Rehearing Denied June 11, 1973.

Richard I. Kroop, Miami Beach, Fla., for plaintiff-appellant.

Anthony Reinert, David L. Willing, Miami, Fla., for defendant-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

PER CURIAM:

This Florida diversity case turns on the construction of the term "injury" as

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al, 5th Cir. 1970, 431 F.2d 409, Part I.

employed in a policy of accidental death and dismemberment insurance. The District Court held that, under the controlling Florida case law, the heart attack suffered by plaintiff's decedent after running to catch a scheduled airplane flight did not constitute "bodily injury caused by an accident" within the meaning of the policy and therefore denied recovery. We affirm.

The case was submitted to the District Court upon these stipulated facts:

1. The Decedent, CARL BENANTE, was a policy holder of ALLSTATE INSURANCE COMPANY Certificate No. 386 421 150, which policy was in force on July 20, 1971. Said policy is an accidental death and dismemberment insurance and a true copy of same is attached to the Complaint.

2. That on July 20, 1971, CARL BENANTE, now deceased, and his sister ANTONINA QUARTUCCIO, were in the Rome Airport awaiting their flight to New York. Both passengers had their tickets validated and were told by an Alitalia attendant to go to Gate 6 to catch their plane.

3. CARL BENANTE, now deceased, was carrying two handbags weighing approximately five pounds each.

4. Upon their arrival at Gate 6, both passengers were told by the attendant there that their Flight No. 610 was not at Gate 6, but at Gate 1, and that they should hurry to Gate 1 to catch the plane because the plane was about to depart.

5. Both passengers ran very fast to Gate 1 in order not to miss their flight. Upon their arrival at Gate 1, both were out of breath and exhausted. Upon their arrival at the gate, they were driven by bus to the aircraft. Both passengers were out of breath as they alighted from the bus and started climbing the steps from the ground to the entrance of the plane.

6. Both passengers proceeded to go down the aisle to their seats and approximately half the length of the plane, CARL BENANTE, now deceased, started to fall backwards. He was caught by the stewards and placed in the nearest seat. As soon as he was seated, he died instantly.

Under the terms of the Certificate of Insurance, Allstate Insurance Company promised to pay the insured's beneficiary $125,000 *if* the insured died as a result of an accidental injury. According to the certificate,

"Injury" means bodily injury caused by an accident occurring while the insurance is in force and which injury results, within 365 days after the date of the accident, directly and independently of all other causes, in any of the losses to which the insurance applies.

Phrased most precisely, the question upon which recovery depends is whether a heart attack that follows voluntary physical exertion constitutes an accidental bodily injury.

Under Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts in diversity of citizenship cases must apply the law of the state in which they sit. Moreover, a federal court must follow the decision of an intermediate appellate state court in the absence of other persuasive indications that the highest court of the state would decide otherwise. Six Companies of California v. Joint Highway District, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940); West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940); Fuchs v. Harbor Island Spa, Inc., 420 F.2d 1100 (5th Cir. 1970); 1A J. Moore's Federal Practice ¶ .307 [1] (2d ed. 1965). Only where no state court has decided the point in issue may a federal court make an educated guess as to how that state's supreme court would rule. *See* Trail Builders Supply Co. v. Reagan, 409 F.2d 1059 (5th Cir. 1969).

In the case before us, the District Court concluded, and we agree, that a Florida court of appeal has decided the question in favor of the appellee insurance company. In Goldstein v. Paul Revere Life Insurance Co., 164 So.2d 576 (Fla.App.), cert. denied, 170 So.2d 587 (Fla.1964), the Florida District Court of Appeal for the Third District said:

"The question of whether a heart attack which follows exertion is within the terms of an insurance policy insuring against accidental bodily injury, has been the subject of much litigation with many conflicting results. Insofar as Florida is concerned, however, this is a question of initial impression, and we must look to the decisions of our sister states for their experience in regard to this problem.

The states are relatively evenly divided, numerically, between those that hold such a factual situation to be accidental injury and those that reach an opposite result. The ratio decidendi of those courts which hold a strain-induced heart attack to be accidental, reason that the activity's (lifting, pushing, pulling, etc.) result (heart attack) was unforeseeable, unintentional, unlikely and therefore 'accidental' as opposed to intentional.

On the other hand, those states which adopt the opposite view argue two ways. First they say that the heart attack resulted from a voluntary act, i. e., lifting, pulling, straining, etc., and although the result is unexpected it does not diminish the voluntariness of the act. A planned event (lifting a plank) which results in an unexpected manner is not such a non-intentional act as to constitute an accident. Secondly, it is argued that accident, as all other terms, should be defined and given their everyday 'man-on-the-street' understood meaning. An accident is usually thought to be an external physical injury as opposed to a disease. It is the opinion of this court that the rule adopted by those courts, holding a heart attack resulting from strain is not an accident or accidental bodily injury, is the sounder proposition."

164 So.2d at 577–578.

Being *Erie*-bound, the District Court was correct in applying the *Goldstein* rule that a heart attack resulting from strain is not an accident or accidental bodily injury.

Affirmed.