354 So.2d 904 (1978)
John BRALEY, Appellant,
v.
AMERICAN HOME ASSURANCE COMPANY, Appellee.
No. 76-2061.
District Court of Appeal of Florida, Second District.
January 25, 1978.
Rehearing Denied February 22, 1978.
W. Eric Venable, Tampa, for appellant.
James C. Hadaway of Fowler, White, Gillen, Boggs, Villareal & Banker, St. Petersburg, for appellee.
HOBSON, Judge.
Braley, plaintiff below, appeals the entry of summary judgment in favor of American Home Assurance Company (Home) on Braley's claim for disability insurance benefits under a policy issued to Braley's employer, Campbell Soup Company, for the benefit of employees such as Braley. Braley contends that the trial court erred in determining, as a matter of law, that an "accident" was not the proper cause of Braley's disability. We agree and reverse the order granting summary judgment and final summary judgment entered thereon.
Read in a light most favorable to the party opposing summary judgment, the record discloses the following facts. John Braley was a long-time employee of Campbell Soup Company. Braley's duties required his construction of shelf and floor displays of canned food products. This included lifting forty-pound cases and long periods of driving and sitting. In May of 1953, Braley injured his back while moving a display in a grocery store. In January of 1955, Braley underwent surgery for a ruptured spinal disc. After that surgery, Braley was able to return to full-time work for Campbell Soup without any significant back problems.
*905 In September 1969, Braley was constructing a display. As he twisted slightly to place a case on a handtruck, he heard a "pop" and immediately felt a sharp pain in his back and down his hips and legs. Braley's physicians diagnosed and treated him for a rupture of the same disc. The treating and examining physicians who were deposed testified that Braley could not perform his previous duties for Campbell Soup Company. As a practical matter, Braley has not been able to work since this injury.
The policy here involved insured Braley "for loss resulting from injury." Injury is therein defined as "bodily injury caused by accident occurring while this policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this policy."
Upon motion, the trial court granted summary judgment in favor of insurer based on its ruling that Braley did not sustain a loss resulting from an "injury" as that term is defined in the policy. This ruling is founded upon two grounds. Firstly, Braley's disability was not caused by an "accident." Secondly, Braley's disability did not result "directly and independently of all other causes."
We consider first whether Braley's disability was caused by an "accident." Braley argues, in effect, that this term should be interpreted so as to include unexpected results of a known cause. Home, however, claims that the term "accident" should be given its literal meaning so as to be limited to only unexpected causes of an injury, as where some fortuitous mishap acts upon the body of the insured to cause disability.
We note at the outset that Home has failed to avail itself of the opportunity to define, qualify, or narrow the term "accident" in its policy. The courts have repeatedly held that the term "accident," as all other terms in an insurance policy not defined in the policy, should be given its everyday "man-on-the-street" meaning. In an effort to find a statement of such a meaning, we turn to the Webster's New International Dictionary, 2d Ed. (G. & C. Merriam Co. 1953) which defines "accident" as:
"An event which takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event."
While this definition well furnishes the concept of unexpectedness,[1] its use of "event" furnishes no insight on the question whether the everyday man-on-the-street considers an accident to be a result as well as a cause. Turning, then, to that authority's definition of "event" we find it defined as:
"The consequence of anything; the issue; conclusion; result."
We find, then, that the everyday man-on-the-street definition of "accident" includes an unexpected result. Lest this seem only so much song and dance, we point out that this comports with judicial definitions and applications of the word "accident."
Workmen's Compensation cases have long interpreted the term "accident" to include unusual or unexpected results. In Duff Hotel Company v. Ficara, 150 Fla. 442, 7 So.2d 790 (1942), our supreme court rejected the contention that "accident" should be "literally" construed to apply only where an external force or circumstance unexpectedly causes injury to the victim. The court held that the term "accident" encompasses the unusual result of a known cause without the showing of any fortuitous mishap, stumble, or fall. In that case, a hernia received by ordinary lifting in the usual manner, was an injury caused by "accident."
In Gray v. Employers Mut. Liability Ins. Co., 64 So.2d 650 (Fla. 1952), where a worker injured her arm from lifting a heavy object, our supreme court once again rejected the definition of "accident" requiring a fortuitous mishap. The court considered dictionary definitions and found that an unexpected result of an ordinary circumstance was commonly understood as an "accident." *906 Thus a back injury suffered when attempting to pick up and load a box certainly was, in common parlance, an "accident." Gray established the "unusual result" test as a criterion for the existence of an accident. Spivey v. Battaglia Fruit Company, 138 So.2d 308, 310 (Fla. 1962). After the Gray decision, it became:
"... settled beyond question in this state that an internal failure, such as a strained muscle, ruptured disc, `snapped' knee-cap, and the like, brought about by exertion in the performance of the regular or usual duties of the employment, may be found to be an injury `by accident,' without the necessity of showing that such injury was preceded by some incident, such as a slip, fall or blow." (Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 [Fla. 1962] at p. 588, Opinion on rehearing construing Workmen's Compensation law.)
These results are consistent with the present Workmen's Compensation statutory definition: "`Accident' means only an unexpected or unusual event or result, happening suddenly." Section 440.02, Florida Statutes (1975).
This definition of "accident" to include the unexpected results of a known cause is not limited to dictionaries and Workmen's Compensation law. In Christ v. Progressive Fire Insurance Company, 101 So.2d 821 (Fla. 2d DCA 1958), this court construed a contractor's liability insurance policy providing coverage for damage "caused by accident." This court recited an often-quoted passage from Midland Construction Co. v. United States Casualty Co., 214 F.2d 665 (10th Cir.1954) to define "accident" as including an unexpected result from a known cause as well as an event from an unexpected cause. In the Florida case, however, neither the cause nor the result could be said to have been unexpected. Similarly, in Shelby Mutual Ins. Co. v. Ferber Sheet Metal Works, 156 So.2d 748 (Fla. 1st DCA 1963), a common understanding of the word "accident" as used in a contractor's liability insurance policy was said to include "an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." 156 So.2d at 751.
A strikingly appropriate case for consideration at this juncture is Roberson v. United States Automobile Association, 330 So.2d 745 (Fla. 1st DCA 1976). That case involved a claim for bodily injury "caused by accident" under an automobile liability insurance policy. There the plaintiff suffered injury when something bled suddenly as he was stooping over in his travel trailer which was covered under the policy. In Roberson, as here, the insurer contended that there was no accident because there was no external trauma or force. The court recognized that the common and reasonable understanding by purchasers of such policies is that the purchaser is covered for any fortuitous and undesigned injury. As in Workmen's Compensation, the average person would consider the unexpected result to be fortuitous and undesigned even though there was no unusual act precipitating the injury. The injury in that case would be commonly understood to have been an "accident" covered by that policy. The policy did not alter this common understanding with a statement defining, qualifying or narrowing the term "accident." The insurer in that case did not put its insured on notice that this common expectation of coverage for such an injury would not follow under the insurer's construction of the policy. Since an insurer, as draftsman of the form policy, will not be allowed to use obscure terms to defeat the purpose for which the policy was purchased, the terms must be liberally construed in favor of coverage so that where two interpretations are available the one allowing greater indemnity will prevail. Summary judgment in favor of the insurer was reversed.
Text writers also muster in support of this definition of "accident." In Couch on Insurance 2d, "accident" is defined to include "an unusual event attending the performance of a usual or necessary act or an unusual effect of a known cause." 10 Couch on Insurance 2d § 41:6 (1962). Accord 1A Appleman, Insurance Law and Practice 23 (1965) (distinguishing also between "accident" and "accidental means"); Vance on Insurance § 181 (3d Ed. 1951).
*907 Whether defined by the man-on-the-street, the lexicographer, the judge, or the text writer, the unexpected result of a usual occurrence is an injury "caused by accident," even though the usual event is not accompanied by any external force or mishap. We must construe the term "accident" as used in this policy in accordance with this common understanding of the term unless Home has provided otherwise in the policy. Here, as in Roberson, the insurer has chosen not to define, qualify, or narrow its use of the term "accident." Home has given the examiners of the policy no reason to believe that its understanding and use of the term is any different than the common understanding and use. Since the trier of fact would have been entitled to find that Braley's injury was the unexpected result of his usual performance of his duties, the trial court erred in finding that the injury could not be an "accident" under the terms of the policy.
Home also argues, in this connection, that even if Braley's disability is the result of the usual performance of his duties, the disability cannot be considered "unexpected" in light of his prior identical injury. While it is true that Braley's prior injury resulted from the same type of work, up until the time of this later injury Braley had resumed this work for a number of years since the first injury without significant incident. There is substantial competent evidence from which the trier of fact could reasonably find that Braley's disability was unexpected. The evidence presented a genuine issue of material fact as to whether Braley's disability was caused by "accident." This issue should have been resolved by the trier of fact after presentation of all the evidence and not by the trial court on motion for summary judgment.
Notwithstanding the above, the trial court's entry of summary judgment would be proper if there was no genuine issue of a material fact as to whether the disability was caused by an accident "resulting directly and independently of all other causes" as this phrase employed in insurance contracts is judicially construed. In support of this action, Home points out that the prior injury was a contributing cause to the later injury resulting in Braley's present disability. We find that under the construction to be given this phrase, Braley's performance of his duties could have been the "direct and independent" cause of his disability even though his prior injury was a contributing factor.
The case of Nationwide Mutual Insurance Company v. Anglin, 306 So.2d 147 (Fla. 2d DCA 1975) is dispositive of this point. There the policy under examination covered only injury which results in loss "directly and independently of all other causes." In Anglin the wife sought insurance proceeds for the accidental death of her husband, a deputy sheriff, who suffered a fatal heart attack after a fight with a suspect. An autopsy revealed that the deputy had a condition of arteriosclerosis for a number of years and that this condition, combined with the exertion from the fight, caused the fatal heart attack. The legal problem occurred because the physical trauma of the fight acted upon the pre-existing ailment so as to cause the injury. Anglin quoted the discussion in 10 Couch on Insurance 2d § 41:380 to harmonize prior Florida cases. That quote discussed the different legal results attendant upon subtle differences in the policy language and is worth reciting here:
"`§ 41:380. Distinction between express exclusion clause and "caused solely by accident" clause.
There is a distinction between an accident policy covering loss "resulting directly, independently and exclusively" from other causes and a similar policy containing the additional phrase excluding disability "wholly or in part, directly or indirectly, from disease or other bodily infirmities," or phrases of like nature. The phrase "resulting directly, independently and exclusively" refers to the efficient, substantial, and proximate cause of the disability at the time it occurs. On the other hand, a policy containing the additional phrase set out above refers to another contributory cause, whether *908 proximate or remote. Where, under a policy containing only the first phrase, the accidental injury acts upon a pre-existing disease causing total disability which except for such disease would not have occurred, the injury is deemed to be the proximate cause of the disability entitling recovery. But it is otherwise where the policy contains the additional phrase indicated above... .'"
Anglin also quotes from Jones v. General Accident, Fire & Life Assur. Corp., 118 Fla. 648, 159 So. 804 (1935) that:
"`A bodily injury may be the direct and exclusive cause of death within the meaning of the policy of insurance in this case when such bodily injury directly and exclusively makes active and progressive a then existing dormant, inactive, diseased condition of the insured, whereby death results; and in such case there may be liability of the insured under the policy, even though the bodily injury would not have resulted in the death of the insured, had he not had the dormant inactive diseased condition of his person... .'" See also 10 Couch on Insurance § 41:79.
After noting the significance of the absence of an exclusion for injuries resulting wholly or partly from other causes, Judge Grimes observed:
"... [W]hen an accident and a pre-existing physical condition combine to bring about death, there will ordinarily be a question of fact if the policy provides for coverage whenever the death occurs directly and independently of all other causes. If the policy also contains a provision excluding coverage where the death arises in part from disease or other bodily infirmity, the insurance company will be entitled to judgment as a matter of law whenever the undisputed facts show that disease materially contributed to the death."
Finding the absence of the additional phrase, this court reversed summary judgment entered in favor of that insurer.
The policy language under examination in the instant case is identical to that in Anglin. This language contains no limitation of coverage where the injury arises in part or indirectly from another cause or contributing condition. The testimony on deposition of Braley and various physicians reveals that Braley's prior injury produced a weakened condition in his back. The testimony is virtually unanimous that the lifting at the time of the second injury combined with this weakened condition to result in Braley's present disability. One of the physicians testified that approximately 10% of the patients with injuries such as Braley's first injury developed subsequent disabilities similar to Braley's present disability despite the absence of additional trauma. However, Braley testified that he had experienced no significant problems performing his usual duties between the time of treatment for his first injury and the occurrence of the second injury. Other physicians also testified that Braley could return to work with modified duties after his first injury. This gives rise to a genuine issue of material fact as to whether Braley's weakened condition after the first injury was inactive until acted upon by the lifting in 1969. If the trier of fact were to find this to be the case, then the trier of fact could reasonably find that Braley's weakened condition did not prevent his disability from being the result of the lifting in 1969, "directly and independently of all other causes." Accordingly, the trial court erred in granting summary judgment in favor of Home on the basis that Braley could not show that his disability resulted from the lifting in 1969, directly and independently of all other causes.
Finally, even though the court below did not base its decision upon this ground, Home also seeks to support the summary judgment with the argument that the policy excludes coverage for any loss "caused by or resulting from ... disease of any kind." The language of this exclusion is not the same as the one which was deemed to be material in Anglin. We do not need to reach the question of whether the subject exclusion would be applicable to exclude a loss partially resulting from a disease because the record discloses a genuine *909 issue of fact concerning whether Braley's prior condition constituted a "disease."
Since there were genuine issues of material fact which precluded the entry of a summary judgment for Home upon any theory, the final summary judgment entered herein must be reversed, and the case is remanded for further proceedings consistent with this opinion.
BOARDMAN, C.J., and GRIMES, J., concur.
NOTES
[1] See Bennett v. Fidelity & Casualty Company of New York, 132 So.2d 788 (Fla. 1st DCA 1961) discussing the importance of the "unexpectedness" element of "accident" in a public liability insurance policy.