DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PEOPLE'S TRUST INSURANCE COMPANY,**
Appellant,

v.

**RESTORATION GENIE INC.,**
a/a/o Yanet Cruz and Daniel Rodriguez,
Appellee.

No. 4D21-628

[March 30, 2022]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Kathleen McCarthy, Judge; L.T. Case Nos. COCE18-1882 and CACE20-13749.

Brett R. Frankel and Jonathan M. Sabghir of People's Trust Insurance Co., Deerfield Beach, and Mark D. Tinker and Mary Lou Cuellar-Stilo of Cole, Scott & Kissane, P.A., Tampa, for appellant.

Adrian Neiman Arkin of Mintz Truppman, P.A., North Miami, for appellee.

WARNER, J.

Appellant People's Trust Insurance Company ("insurer") appeals a final summary judgment entered in favor of assignee/appellee Restoration Genie, Inc. ("assignee"), arising from an insurance claim for water mitigation services. Insurer claims that material disputed issues of fact remain as to whether assignee complied with the policy provisions for payment. Assignee concedes that there are issues of fact. However, assignee contends that the limitation of its invoice to the amount insurer's preferred contractor would charge for the same service based upon a service agreement essentially created a policy limit for services for which insureds were provided no notice. We reject assignee's policy argument and reverse the summary judgment because disputed issues of fact remain.

Insureds purchased a homeowners insurance policy which included a "Preferred Contractor Endorsement." The endorsement provided insureds

with an annual premium credit of $75 per year in exchange for their agreement to allow insurer the option to select Rapid Response Team ("RRT") as its preferred vendor to make covered repairs.

The endorsement substantially altered the policy's "Reasonable Repairs" provision. The endorsement provides:

> SECTION I – PROPERTY COVERAGES
> E. Additional Coverages
>
> 2. Reasonable Repairs is deleted and replaced by the following for losses other than sinkhole:
>
> a. If a peril causing a loss and related damage are covered . . . and repairs are necessary to protect covered property from further damage, "you" must notify us before authorizing or commencing repairs so "we", at our option, may select Rapid Response Team, LLC™ to make the covered Reasonable Repairs.
>
> b. If "you" do not notify "us" and allow "us", at our option, to select Rapid Response Team, LLC™ for the covered Reasonable Repairs, "our" obligation for repairs made to protect the covered property from further damage is limited to the lesser of the following:
>
> > (1) The reasonable cost "you" incur for necessary repairs made solely to protect the property from further damage; or
> >
> > (2) The amount "we" would have paid to Rapid Response Team, LLC™ for necessary repairs made solely to protect the covered property from further damage.

The endorsement thus required notice to insurer of the occurrence of a loss or damages before emergency services began to allow insurer to elect its chosen vendor, RRT, to perform the reasonable repairs. In the event insureds did not notify insurer of the loss, then insurer's payment obligation was limited to the lessor of the reasonable cost incurred for necessary mitigation or the amount which insurer would have paid RRT to perform those emergency services.

During the term of the policy, insureds experienced a water leak in their home and hired assignee to perform water mitigation services. Insureds assigned their benefits under the policy to assignee that same day and assignee provided emergency services drying out insureds' home. Assignee invoiced insurer for the total amount of $5,327.10. Insurer paid assignee $2,000. Insurer explained its payment by quoting the policy that when notice of the loss was not given for the need for repairs, the policy provided that insurer's obligation was limited to the amount which it would have paid RRT. After the effective date of insureds' policy, insurer had entered into a service agreement with RRT for which all water mitigation services would be performed for a flat fee of $2,000 per assignment. Therefore, insurer issued a check to assignee for $2,000.

Assignee filed suit for the difference between insurer's payment and its bill. Insurer answered and contended that because assignee did not notify it of the damage and give it the right to use RRT, its obligation to pay was limited to the amount it would have paid RRT, *i.e.*, $2,000. Assignee moved for summary judgment, contending that it had notified insurer according to the policy. Moreover, it argued that the service agreement between insurer and RRT created a limitation of coverage of which insureds were not notified and thus should not be enforced against it as assignee.

With the motion for summary judgment, assignee filed its representative's affidavit. According to its representative, assignee notified insurer of the loss and the immediate need for water mitigation service before beginning any work. Insurer was difficult to reach and appeared to be inundated and overwhelmed with claims, as Hurricane Irma had hit around the same time. When contacted, insurer advised assignee that its vendor was unable to perform the services. Insurer authorized assignee to perform the necessary mitigation services without conditions or limitations and to submit an invoice for payment.

In opposition to assignee's representative's affidavit, insurer's representative testified in a deposition and by affidavit that insurer did not have any record of receiving a call or any notification from insureds. Despite this apparent disputed issue of material fact, the trial court granted assignee's motion and entered final summary judgment for the assignee. Insurer appeals that judgment.

On appeal, insurer contends that summary judgment was improper because a material issue of fact is in dispute. Assignee admits that on the issue of notice, a disputed issue of fact remains, as the affidavits are conflicting as to whether the assignee gave notice as required by the policy

3

prior to commencing repairs. But, even if no notice was given to insurer, assignee claims that summary judgment should still be affirmed, because subpart (b) of the property coverage endorsement constitutes a policy limitation for which insureds were not provided notice. Thus, the policy limitation cannot be enforced against insureds' assignee.

An insurance policy's coverage is defined by the policy's plain language. *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005). "However, ambiguous provisions are liberally construed in favor of the insured and strictly against the insurer." *Arguello v. People's Tr. Ins. Co.*, 315 So. 3d 35, 38 (Fla. 4th DCA 2021) (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). Nevertheless, "the rule of liberal construction in favor of the insured applies only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction[.]" *Id.* (quoting *Liebel v. Nationwide Ins. Co. of Fla.*, 22 So. 3d 111, 115 (Fla. 4th DCA 2009)).

Under the endorsement, insureds were required to notify insurer prior to commencing any repairs, so that insurer could use RRT to make the covered repairs. Subpart (b) provided a remedy to insurer if notice was not given. Subpart (b) limited any payments for necessary repairs to protect the property from further damages as the *lesser* of (1) the reasonable cost incurred by insureds to make such repairs, or (2) the amount insurer would have paid RRT for such repairs. Based upon an agreement between insurer and RRT, entered into after the policy was written, that amount was $2,000.

Rather than change the policy coverage, subpart (b) establishes an agreed-upon remedy in the event that insureds failed to properly give notice. *See Orkin Exterminating Co., Inc. v. DelGuidice*, 790 So. 2d 1158, 1161 (Fla. 5th DCA 2001) (noting that parties are limited by the remedy provided for in their contract). The remedy does nothing more than prevent insurer from being harmed by insureds' breach of the policy by restricting its obligation to the amount it would have paid if insureds had not breached. The policy is not ambiguous.

Assignee contends that the service agreement between insurer and RRT effectively amends the policy to limit the payment for water mitigation to $2,000, and insureds should have been notified of that fact. The service agreement does not amend the policy. It does not create a different policy limit for coverage. Nor did the service agreement need to be incorporated into the policy, where it was simply offered to prove how much insurer would have paid RRT for the work. No policy provision prevents RRT from

4

providing what may be a volume discount to insurer through its service agreement.

Insureds could have rejected the preferred contractor endorsement, but instead opted for a very modest discount on price in return for being bound to use RRT to mitigate and repair any property loss. That choice may have been a bad bargain, but it was agreed to by insureds.

Assignee cites several PIP cases in support which are inapposite, as PIP is a mandatory coverage governed by statute, whereas homeowners insurance is a voluntary coverage. *See, e.g.*, *Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.*, 141 So. 3d 147, 158 (Fla. 2013) (holding that an insurer must provide notice in the policy of its election to use the fee schedules under PIP statute before attempting to limit reimbursements for covered reasonable expenses); *Ward v. Nationwide Mut. Fire Ins. Co.*, 364 So. 2d 73, 77 (Fla. 2d DCA 1978). The supreme court has urged caution on this very point: "[B]ecause both PIP and UM are statutorily mandated coverages, analogies to cases interpreting coverages that are not statutorily mandated, such as provisions in fire, life, and property insurance policies, may not necessarily be illuminating in guiding our analysis." *Flores v. Allstate Ins. Co.*, 819 So. 2d 740, 745 (Fla. 2002).

The relevant endorsement provisions set forth an unambiguous remedy in case insureds failed to fulfill their notice obligation. The provisions did not alter the policy limit. Thus, assignee's alternative argument to sustain the final judgment fails.

Because disputed issues of material fact remain, we reverse the final summary judgment and remand for further proceedings.

*Reversed and remanded.*

LEVINE and KLINGENSMITH, JJ., concur.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**

5